Angel SIERRA–SERPA,
Plaintiff, Appellant,

v.

Manuel MARTINEZ, et al.,
Defendants, Appellees.

No. 91–2062.

United States Court of Appeals,
First Circuit.

Heard May 4, 1992.

Decided May 27, 1992.

Carlos V. Garcia Gutierez with whom Guillermo J. Ramos Luina, was on brief, for plaintiff, appellant.

Carlos Lugo Fiol, Asst. Sol. Gen., Dept. of Justice, with whom Reina Colon De Rodriguez, Acting Sol. Gen., was on brief, for defendants, appellees.

Before SELYA, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

## CERTIFICATION TO THE SUPREME COURT OF PUERTO RICO

LEVIN H. CAMPBELL, Senior Circuit Judge.

The resolution of this appeal depends on a question of Puerto Rico law which has not been specifically addressed by the Supreme Court of Puerto Rico and the decision of which may have important public policy implications. Therefore, on our own motion, we certify the question to the Supreme Court of Puerto Rico pursuant to its Rule 27, 4 L.P.R.A.App. I–A.

## I. BACKGROUND

Plaintiff Angel Sierra–Serpa ("Sierra") brought this action under 42 U.S.C. § 1983 in the federal district court, alleging violations of the federal Constitution arising out of prison officials' handling of his urine sample. At the time of the incident, Sierra was serving the sentence of a Puerto Rico court at a facility controlled by the Puerto Rico Administration of Corrections. On January 12, 1988, Sierra gave prison officials a urine sample which allegedly tested positive for marijuana. The positive test resulted in reclassification of Sierra's custody status, transfer to a different facility and loss of furlough privileges.

Sierra claimed that he had not used marijuana, and that prison officials had improperly failed to label his urine sample and refused to let him give another sample. Acting through counsel, Sierra requested a second testing and, on February 11, 1988, he filed both a "motion" and a "grievance" with prison officials. These and subsequent administrative complaints were rejected and, on March 30, 1988, Sierra's counsel filed a complaint for injunctive re-

lief in the Superior Court of Puerto Rico. Following several legal battles at both the administrative and judicial levels, the Superior Court ordered that all of Sierra's "privileges" be restored. Certiorari was denied by the Supreme Court of Puerto Rico. Nevertheless, Sierra alleges, his furloughs were not restored.

Sierra was released from prison on September 12, 1989. He brought the present federal complaint on September 11, 1990 in the United States District Court for the District of Puerto Rico. The district court, 777 F.Supp. 126 (D.P.R.1991), ruled that Sierra's cause of action under § 1983 accrued, at the latest, on April 4, 1989, the date by which the Administration of Corrections should have implemented the Superior Court's order. The district court held, therefore, that Sierra's action was barred by Puerto Rico's one year statute of limitations for tort actions and granted defendants' motion to dismiss.

## II. THE ISSUE

The parties agree that Puerto Rico's one year statute of limitations for torts governs. *See* art. 1868, Civil Code (31 L.P.R.A. § 5298(2)). The question is whether the time of Sierra's incarceration counts in determining whether a year has run. This question, in turn, depends on whether the portion of Article 40 of Puerto Rico's Code of Civil Procedure of 1933, excluding time spent in prison from the limitations period, was *implicitly* repealed by the Puerto Rico legislature in 1974 when it removed from the Penal Code the remnants of the civil law concept of interdiction.

Article 40 has never been explicitly repealed. It provides:

If a person entitled to bring an action ... be at the time the cause of action accrued, either:

1. Within the age of majority; or
2. Insane; or,
3. *Imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life;* or,
4. A married woman, and her husband be a necessary party with her in com-

mencing such action; the time of such disability is not a part of the time limited for the commencement of the action.

Art. 40, Code of Civil Proc., 1933 (32 L.P.R.A. § 254) (emphasis added).

If section 3 of the above statute is still in full force and effect, it would appear that Sierra's action is not time barred. The question, therefore, is whether the statute, insofar as it may apply in cases like Sierra's, was implicitly repealed by the repeal, in 1974, of Article 20 of the Penal Code of 1937. Article 20 had provided that:

A sentence of imprisonment in the penitentiary for any term less than for life suspends all the civil rights of the person so sentenced, and forfeits all public offices and all private trusts, authority, or powers during such imprisonment.

Sec. 20, Penal Code, 1937. This suspension of civil rights traced its origins to the civil law concept of interdiction, under which a party convicted of a crime was deprived of his civil rights. *Rodriguez Candelario v. Rivera Vega*, No. CE–86–608, slip op. at 2 (Supreme Court of Puerto Rico, January 23, 1989) (certified English translation); 89 JTS 12. Those rights included "guardianship and tutorship rights, ... marital authority, ... [and] the right to administer property...." *Id.* slip op. at 3 (citation omitted). In addition, both parties apparently agree that civil rights included the right to sue and be sued, although neither cites any explicit Puerto Rico authority to that effect.

In 1902, interdiction, as such, was "[stricken] ... from the Penal Code," *id.*, but Article 20 was enacted, subjecting certain convicts to the suspension of their civil rights. *See* art. 20, Penal Code, 1902. In 1974, however, Article 20 was itself stricken, so that no convicts were thereafter subjected to any loss or suspension of civil rights. *See* art. 39–49, Penal Code, 1974 (33 L.P.R.A. §§ 3201–3212); *Rodriguez Candelario*, slip op. at 5. The question is thus whether the repeal of Article 20 must be deemed *implicitly* to have repealed section 3 of Article 40, although the latter, unlike Article 20, was never *expressly*

stricken or amended by the Puerto Rican legislature. .

Under Puerto Rico law, a statute may be implicitly repealed when a "new law contains provision[s] either contrary to or irreconcilable with those of the former law." Art. 6, Civil Code (31 L.P.R.A. § 6). In order to decide whether the 1974 Penal Code, omitting the former Article 20, is "contrary" to Article 40(3) of the 1933 Code of Civil Procedure, one must determine the purpose of the challenged provision in Article 40. Sierra contends that, although Article 40(3) may have some relationship to the suspension of civil rights, its main purpose is to accommodate the practical difficulties of litigating from prison. Thus, he says, the elimination of the suspension of civil rights is perfectly consistent with the retention of Article 40(3). Although a prisoner is no longer legally forbidden to sue, it is nevertheless important that the limitations period not begin to run against him until he is released, at which time he has greater access to counsel and other resources necessary, in practice, to file suit.

Sierra also points out that Article 40(3) applies to anyone "[i]mprisoned on a criminal charge," which, he says, includes misdemeanants and pretrial detainees. Article 20's suspension of civil rights, on the other hand, applied only to those sentenced to "imprisonment in the *penitentiary*," which did not include such parties. That the two statutes apply to different classes of people underscores Sierra's argument that the legislative policy behind Article 40(3) goes beyond protecting those whose legal capacity to sue was suspended. Even when suspension of civil rights existed, certain incarcerated prisoners not subject to such suspension—misdemeanants and pretrial detainees—were able to take advantage of Article 40(3).

Defendants, represented by the Solicitor General of Puerto Rico, argue for a narrower reading of Article 40(3). They claim that the overall purpose of Article 40 is to protect those who lack the legal capacity to sue by tolling the limitations period until they acquire that capacity—by release from prison, attainment of majority, etc.

*See Márquez v. Superior Court,* 85 P.R.R. 536, 539 (1962) (purpose of Article 40 "is to protect the interests of the disabled persons until such time as they acquire the *necessary juridical capacity to assert their rights*") (emphasis added). Thus, because convicts' legal capacity to sue is no longer suspended during their incarceration, there is no longer any need for section 3 of Article 40.

Responding to Sierra's argument with regard to misdemeanants and pretrial detainees, the Solicitor General concedes that, as to such parties, Article 40(3) may have some purpose other than protecting those who lack the legal capacity to sue. However, the Solicitor General draws a different conclusion from this than does Sierra, contending that Article 40(3) remains in effect as to misdemeanants and pretrial detainees but has been implicitly repealed as to anyone sentenced to imprisonment in the penitentiary. The Solicitor General claims that this position would not significantly affect the limitation of actions, as misdemeanants and pretrial detainees spend only a relatively short time in prison. Conversely, he says, numerous practical problems would result if limitations periods did not run during the incarceration of convicts sentenced to imprisonment in the penitentiary, as such incarceration can last a very long time.

We are unable to find a conclusive answer to the parties' arguments in the decisions of the Supreme Court of Puerto Rico. To be sure, the Court has held that one statute was implicitly repealed by the elimination of the vestiges of interdiction. In *Rodriguez Candelario,* the Court held that a provision in the Civil Code establishing as a ground for divorce " '[c]onviction of [a spouse] of a felony which may involve the loss of civil rights' " could no longer be invoked. *Rodriguez Candelario,* slip op. at 2 (quoting art. 96, Civil Code (31 L.P.R.A. § 321(2))). The Court held that "[o]nce the external structure which supports the divorce grounds here in controversy crumbles, we cannot, through a fiction of law, give it an independent life in the Civil Code." *Rodriguez Candelario,* slip op. at 6.

**4**

We cannot say that it necessarily follows from *Rodriguez Candelario* that Article 40(3) was implicitly repealed by the repeal of Article 20. The statute in *Rodriguez Candelario* explicitly referred to a "felony which may involve the loss of civil rights," but, after 1974, such felonies no longer existed. The statutes at issue in this case, however, are not so obviously irreconcilable. Sierra has advanced a perfectly logical rationale under which Article 40(3) may continue to make sense even in the absence of any suspension of a convict's civil rights. Although *Márquez, supra,* casts some doubt on Sierra's argument, we are reluctant to hold that an implicit repeal has occurred when there is a plausible argument for the statute's continued existence. *See Campis v. People,* 67 P.R.R. 366, 369 (1947) ("[i]mplied repeals are not favored by the law"). Moreover, that different classes of prisoners are affected by Article 40(3) and by the former suspension of civil rights statute lends some support to Sierra's side of the debate.

Because we are uncertain as to Puerto Rican law on this question, and because of the potential importance of this question to litigation in Puerto Rico, we certify the following to the Supreme Court of Puerto Rico:

### QUESTION OF LAW

Does Article 40(3) of the Code of Civil Procedure of 1933 exclude from the applicable limitations period the time during which a party is "[i]mprisoned on a criminal charge," if that party would formerly have been subjected to the suspension of his civil rights pursuant to Article 20 of the Penal Code of 1937?

We would also welcome the advice of the Supreme Court of Puerto Rico on any other relevant aspect of Puerto Rico law which the Court believes would give context to its response or aid in the proper resolution of the issues bearing on the timeliness of Mr. Sierra–Serpa's action.

Pending response to the above question by the Supreme Court of Puerto Rico, we shall retain appellate jurisdiction over this appeal. The Clerk is directed to provide the Supreme Court of Puerto Rico with certified copies of the complaint, the opinion of the district court, and the parties' briefs in this court.

*So ordered.*