Golder v. Lockheed Sanders, Inc.      CV-95-089-M     08/26/96 P
                 UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


David G. Golder,
       Plaintiff

       v.                                      Civil No. 95-89-M

Lockheed Sanders, Inc.,
       Defendant.


                                O R D E R


     In March of 1994, after twelve years with Lockheed Sanders,
David Golder was laid off as part of a reduction in force.  He
brings this action against his former employer alleging that he
was unlawfully discriminated against based upon his age.  See 29
U.S.C. § 621 et seq., The Age Discrimination in Employment Act.
Sanders denies that Golder's age in any way influenced its
decision to terminate him and moves for summary judgment.


                          **Standard of Review**

     Summary judgment is proper "if pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material

fact "is one `that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  Anderson, 477 U.S. at 256. The party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition."  Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). That burden is discharged only if the cited disagreement relates to a genuine issue of material fact.  Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030 (1993).

**Factual Background**

In November of 1982, Sanders hired Golder, then aged 49, as a mechanical engineer.  For much of his time with Sanders, Golder worked in the Defense Systems Division, Department 1-1455, which was devoted exclusively to antenna coupler work.  More recently, after Sanders disbanded Department 1-1455, Golder was moved into

2

the mechanical engineering section of Department 1-1475, where he continued to work on antenna couplers.  Sanders does not dispute the fact that during his employment, Golder received favorable annual peer reviews and generally performed his job in a satisfactory fashion.[1]

In 1992, Sanders made Dennis Fontaine head of the mechanical engineering section of Department 1-1475.  As Golder's immediate supervisor, Fontaine had first hand knowledge of Golder's job

---

[1]  Sanders employs a system by which it annually reviews the job performance of each of its employees.  Sal Magnano, Vice-President of Sander's Finance Division describes that system as follows:

> The peer ranking system at Sanders was established in the mid-1980's as a mechanism by which similarly classified employees are annually evaluated and ranked based on such areas as job knowledge, performance and productivity, problem solving, communication, and business effectiveness.  Points are also awarded for seniority.

> Employees are rated and ranked only within their specific job classification.  The initial rating is done by the employee's immediate supervisor, a person possessing substantial first-hand knowledge regarding the skills and performance of the employee assessed.  Following this initial rating, an integration meeting is held where the peer rankings are presented, explained and justified.  This meeting is intended to assure the quality and fairness of assessments done within a specific job classification.

Affidavit of Sal Magnano, paras. 5-6.

3

performance and was responsible for his annual evaluation and peer ranking. In 1994, in response to substantial reductions in defense spending and a resulting reduction in demand for Sanders' antenna coupler work, Fontaine determined that Sanders would have to lay off some of the employees in his department. In his affidavit, Fontaine states:

> Following my determination that there would not be enough work for the number of mechanical engineers I had, I attempted to ascertain the particular skills needed to accomplish the Department's projected mechanical engineering work. Based on all of the above, a decision was made to eliminate a number of jobs by title and labor grade. Thereafter, the peer rankings for employees holding the particular job titles designated for layoff were reviewed, with the lowest peer ranked employees being selected for layoff. In Golder's case, it was determined that it was necessary to lay off one of the two "Principal Mechanical Engineers." Because Golder's 1993 peer ranking score was 56 and Donald Smith's (the other Principal Mechanical Engineer) peer ranking score was 83, Golder was selected for layoff. Golder's peer ranking score was lower than Donald Smith's in 1991 and 1992, as well.

Affidavit of Dennis Fontaine, at paras. 6-7.


Although Golder does not challenge Fontaine's assertion that his annual peer review scores were below those of Smith for the three years preceding his termination, he questions the accuracy of his most recent annual review. Specifically, because there

4

was a "disparity" between his most recent annual review and the scores he had received in prior years, he asserts that the most recent score is not a reliable measure of his job performance. Additionally, he suggests (without expressly stating) that his low score was the product of personal differences that he had with Fontaine and, therefore, was not reflective of his actual job performance. Finally, he generally attacks Sanders' peer review system as being "insupportable," "highly subjective," and "lack[ing] credence." Plaintiff's Memorandum at 7. He does not, however, elaborate upon the basis for his doubts about the accuracy or reliability of the peer review system.

Lastly, Golder claims that in 1994, Sanders laid off seven employees in his department. Of those seven, he says that six were over age forty. From that data Golder concludes that Sanders has systematically targeted older employees (including him) for termination, in violation of the ADEA.

## Discussion

I. The Analytical Framework.

The ADEA provides that it is unlawful for an employer to discharge any individual because of his or her age. 29 U.S.C. §

5

632(a).  In cases such as this, where there is little overt evidence of age discrimination, courts usually employ the burden-shifting framework articulated by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  The Court of Appeals for the First Circuit has summarized the <u>McDonnell Douglas</u> burden-shifting paradigm as follows:

> Under this formulation, a plaintiff opens with a prima facie showing of certain standardized elements suggestive of possible discrimination.  . . .
>
> Establishment of the prescribed prima facie case creates a presumption that the employer engaged in impermissible age discrimination.  However, to rebut this presumption, the employer need only "articulate a legitimate nondiscriminatory reason for the employee's termination."  The employer's obligation is simply one of production.  "The burden of persuasion remains [the employee's] at all times."

<u>LeBlanc v. Great American Ins. Co.</u>, 6 F.3d 836, 842 (1st Cir. 1993) (citations omitted), <u>cert.</u> <u>denied</u>, 114 S.Ct. 1398 (1994).

Assuming the employee has established a prima facie case suggestive of age discrimination, and provided the employer then responds with a legitimate, nondiscriminatory reason for the employee's termination, the burden of persuasion reverts to the employee.

> [Once] the defendant has succeeded in carrying its
> burden of production, the <u>McDonnell Douglas</u> framework -
> - with its presumptions and burdens -- is no longer
> relevant. To resurrect it later, after the trier of
> fact has determined that what was "produced" to meet
> the burden of production is not credible, flies in the
> face of our holding in <u>Burdine</u> that to rebut the
> presumption "the defendant need not persuade the court
> that it was actually motivated by the proffered
> reasons." 450 U.S., at 254. The presumption having
> fulfilled its role of forcing the defendant to come
> forward with some response, simply drops out of the
> picture.

<u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 510-11 (1993).

The employee must then prove that the reason articulated by the

employer for his or her termination was a mere pretext for

unlawful age discrimination. <u>LeBlanc</u>, 6 F.3d at 842. And, in

this circuit, the employee must produce "not only minimally

sufficient evidence of pretext, but evidence that overall

reasonably supports a finding of discriminatory animus." <u>Id</u>. at

843 (citation and internal quotations omitted).

So, to avoid summary judgment, the employee must come

forward with evidence, either direct or circumstantial, of the

employer's discriminatory animus. He or she "may not simply

refute or question the employer's reasons. To defeat summary

judgment at this stage, a plaintiff must produce evidence that

7

the real reason for the employer's actions was discrimination."
<u>Gadson v. Concord Hospital</u>, 966 F.2d 32, 34 (1st Cir. 1992).[2]


II.  <u>Plaintiff's Prima Facie Case</u>.

In support of his prima facie case suggesting that Sanders engaged in unlawful age discrimination, Golder alleges that: (1) he was at least 40 years old; (2) he experienced an adverse employment action; (3) he met Sanders' legitimate job performance expectations; and (4) Sanders did not treat age neutrally when determining which employees would be laid off.  <u>See</u> <u>Vega v. Kodak Caribbean, Ltd.</u>, 3 F.3d 476, 479 (1st Cir. 1993) (outlining the elements of plaintiff's prima facie case); <u>see also</u> <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 116 S.Ct. 1307, 1310 (1996) (modifying the elements of plaintiff's prima facie case and noting that the mere fact that plaintiff was replaced by a worker outside the protected age class is not a reliable indicator of age discrimination).

_____

[2]  Although <u>Gadson</u>, <u>supra</u>, was a racial discrimination case brought under Title VII, the court applied the <u>McDonnell Douglas</u> burden shifting framework.  Accordingly, the court's holding in that case is instructive in the present case.

It is with regard to the final element (evidence of Sanders' improper reliance upon age as a factor in determining which employees to lay off) that plaintiff's evidence is lacking. Nevertheless, crediting each of plaintiff's allegations as true, the court will proceed as if Golder has established a prima facie case of discrimination.

III. Defendant's Response.

Assuming that Golder has presented a prima facie case of unlawful age discrimination, Sanders must respond with a legitimate, nondiscriminatory reason for terminating him. Its burden is, however, simply one of production. That is to say, it need not disprove Golder's assertions because he, as the plaintiff in this proceeding, retains the burden of persuasion at all times. LeBlanc, 6 F.3d at 842.

In response to Golder's allegations, Sanders has articulated a legitimate and nondiscriminatory basis for his release which, if credited as true, demonstrates that it did not unlawfully discriminate against him. Specifically, it has provided evidence (in the form of affidavits which are largely unrebutted) that: (1) cuts in defense spending and increased competition from

9

smaller, more efficient companies have reduced demand for its antenna coupler work; (2) a reduction in force in Golder's department was required; and (3) employees were identified for lay off based upon Sanders' perceived workforce needs and "age neutral" annual employee reviews (in fact, one might argue that older employees were provided additional -- albeit indirect -- protection from discharge in so far as Sanders' annual review system awards points to employees for their "seniority" or length of time employed by Sanders).

With regard to Golder in particular, Sanders has demonstrated that it reasonably concluded that one of the two Principal Mechanical Engineers in Golder's department had to be released. Additionally, it has shown that of those two employees, Golder's annual evaluation was lower than that of the other Principal Mechanical Engineer, not only for the year in question, but also for the two prior years.

Golder disputes Sanders' claims that the Principal Mechanical Engineer in his department who was not laid off had greater experience and a broader range of usable skills. He also claims that he was "replaced" by a younger employee and disputes

10

Sanders' assertion that his work was simply assumed by other Sanders employees.  His claims are, however, almost entirely based upon opinion and speculation.  They are, therefore, insufficient to raise a genuine issue of material fact, particularly when Sanders has supported its claims with affidavits from individuals purporting to have personal knowledge of those facts.

First, it is clear that Golder was terminated as part of a reduction in force.

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company.  An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge.  However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.  A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir.), cert. denied, 498 U.S. 878 (1990).  It is equally evident that Golder was not "replaced" by another individual as that term is used in the employment context.  Instead, his duties were assumed by another Sanders employee who, in addition to taking on Golder's

11

responsibilities, continued to perform his own duties.  See
Affidavit of Dennis Fontaine, at para. 11.

Finally, the court turns to Golder's claims that he had a
broad range of engineering skills and was, therefore, capable of
performing work other than merely antenna coupler work.  When, as
here, an employee is released as part of a reduction in force,
proof of his or her ability to perform the job adequately is, at
best, only minimally relevant because someone has to be
terminated.  Unfortunately, although that person may well be
qualified for the position, the employer may simply be unable to
retain him or her for economic reasons.

> That co-workers and direct managers may have thought he
> did a good job, or that he did not "deserve" the
> ratings or did not "deserve" to get laid off, is close
> to irrelevant. . . . [P]roof of general qualifications
> is less relevant in a reduction-in-force claim because
> someone has to be let go.

Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 235 (4th
Cir. 1991) (emphasis in original).

That Golder was a capable mechanical engineer is not in
doubt.  However, employment evaluations and decisions often
involve a subjective component, and otherwise qualified employees

12

may be discharged, provided, of course, that their discharge is not the product of unlawful discrimination. It is Golder's burden to produce evidence which demonstrates that Sanders engaged in unlawful age discrimination and, ultimately, that is where his case fails.

IV. Golder's Burden of Persuasion.

Turning to the final element of the McDonnell Douglas framework, the court holds that Golder has failed to carry his burden of production. Stated somewhat differently, he has not demonstrated that there is any genuine issue of material fact with regard to the essential elements of his age discrimination claim.

> To survive summary judgment, "a plaintiff must establish at least a genuine issue of material fact on every element essential to his case in chief." In other words, a plaintiff must adduce some minimally sufficient evidence to support a jury finding that he has met his burden at the first stage, and again at the third stage (so long as the defendant has met its second-stage burden by articulating a nondiscriminatory reason for the adverse employment action). Moreover, the material creating the factual dispute must herald the existence of "definite, competent evidence" fortifying the plaintiff's version of the truth. Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice.

13

<u>Vega v. Kodak Caribbean, Ltd.</u>, 3 F.3d 476, 479 (1st Cir. 1993) (citations omitted).

In an effort to carry his burden, plaintiff makes two allegations which were alluded to previously.  First, he claims that Sanders' peer evaluation system is unreliable, overly subjective, and generally unfair.  Accordingly, he argues that the court should not accept it as a legitimate basis for his termination and, instead, should infer that it is merely a pretext advanced by Sanders to conceal its true, unlawful motivations.  Unfortunately, however, Golder has produced no evidence in support of his claims.  Instead, he relies exclusively upon unsupported allegations, conjecture, and surmise.  Interestingly, he focuses his attack entirely upon his most recent annual review.  And, in support of his claim that it was biased and unfair, he points to his <u>prior</u> annual reviews, which were generally more favorable and resulted in higher overall scores.  However, those prior reviews (which he apparently accepts as reasonable measures of his job performance) were also lower than the other Principal Mechanical Engineer in his division (i.e., the employee Sanders chose to retain).

14

In the end, Golder's charges with respect the Sanders' annual review system lack substance. As the Court of Appeals for the Fourth Circuit has held:

> Deciding to lay off someone based on a company-wide performance rating system, which has been in place for years and which has not been shown to be discriminatory, and choosing to lay off all those who were among the lowest rated, must count as "an articulation of a legitimate, non-discriminatory reason."

Conkwright v. Westinghouse Elec. Corp., 933 F.2d at 234 (citation omitted). Here, as in Conkwright, the employee review system used by Sanders was (at least based upon the evidence before the court) "objectively and facially fair, even if it, like all human endeavors, was imperfectly administered." Id. at 235.

Next, Golder claims that the fact that Sanders terminated seven employees from his department, six of whom were over the age of 40, demonstrates that Sanders engaged in unlawful age discrimination. Golder has not, however, presented the court with any greater statistical analysis of Sanders' employment actions on a company-wide basis. He rests his claims of unlawful age discrimination upon the firing of six employees from a company which employs several thousand people, over two hundred

of whom were employed in its Defense Systems Division (the division in which Golder was employed).

Golder's statistical evidence lacks persuasive weight. First, it is based upon an extremely limited sampling of Sanders' employment decisions. For that reason, it is subject to a substantial margin of error and is inherently unreliable. Even if his statistics were reliable, Golder neglected to allege the percentage of Sanders' workforce (whether company-wide, in the Defense Systems Division, or in his department) over 40 years of age. Without such information, his claim that 85% of the people in his department who were laid off fall within the protected group (i.e., over 40) is not very meaningful. For instance, if the vast majority of people in his department were over age 40, the fact that 85% of those laid off were over 40 would not, standing alone, provide much support for the assertion that Sanders discriminated on the basis of age. More fundamentally, however, a plaintiff in an age discrimination case cannot selectively present statistics which support his case and which are based on extremely limited sampling, while ignoring (of failing to gather) a broader range and more representative sample of information.

16

More generally, Golder's statistical evidence lacks persuasive weight because, even if the court were to credit it as suggestive of Sanders' general animus against employees over 40, Golder has failed to present any evidence which would support the inference that Sanders discriminated against <u>him</u>. As the court of appeals for this circuit has noted:

> In a disparate treatment case . . ., the central focus "is less whether a pattern of discrimination existed [at the company] and more how a particular individual was treated, and why." As such, statistical evidence of a company's general hiring patterns, although relevant, carries less probative weight than it does in a disparate impact case. In this context, statistical evidence in a disparate treatment case, in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee. This is because a company's overall employment statistics will, in at least many cases, have little direct bearing on the specific intentions of the employer when dismissing a particular individual. <u>"Without an indication of a connection between the statistics," the practices of the employer, and the employee's case, statistics alone are likely to be inadequate to show that the employer's decision to discharge the employee was impermissibly based on age</u>.

<u>LeBlanc</u>, 6 F.3d at 848 (citations omitted) (emphasis added).

## Conclusion

Based upon the foregoing, the court is constrained to hold that Golder has failed to demonstrate that there is a genuine

17

issue of material fact with regard to any of the essential elements of his age discrimination claim. Even liberally crediting him with establishing a prima facie case of discrimination, he has failed to produce evidence which, if taken as true, would support his claim that Sanders unlawfully discriminated against him. Neither his statistical evidence which purportedly demonstrates Sanders' discriminatory animus against older employees nor his unsupported charges against Sanders' employee evaluation system are sufficient to avoid summary judgment. In short, he has failed to come forward with "evidence that overall reasonably supports a finding of discriminatory animus," LeBlanc, 6 F.3d at 843, or that suggests that Sanders' stated reasons for his termination (i.e., reduction in force, need to release one of two Principal Mechanical Engineers, and use of annual peer review score to select the employee to be terminated) are pretextual, and the actual motivation constituted unlawful discrimination.

Based upon the record presently before the court, it is plain that Sanders is entitled to judgment as a matter of law. Accordingly, Sanders' motion for summary judgment (document no.

18

6) is granted.  The Clerk of the Court is instructed to enter judgment in favor of the defendant and close the case.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

August 26, 1996

cc:  Robert J. Rabuck, Esq.
     Edward M. Kaplan, Esq.