Smith v. Merrill                          CV-97-260-M    11/05/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Brian Smith, et al.

    v.                                              Civil No. 97-260-M

Stephen Merrill, et al.



**O R D E R**

Eighteen inmates at the New Hampshire State Prison ("NHSP") brought this action pursuant to 42 U.S.C. § 1983 to assert violations of their First, Eighth and Fourteenth Amendment rights.  They seek both monetary and injunctive relief.  On August 8, 1997, I recommended that the complaint be dismissed for failing to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) (Supp. 1997).  Shortly thereafter plaintiffs filed a Motion to Object to Report and Recommendation (document no. 13) and a Motion to Supplement the Complaint (document no. 14), to demonstrate that they had exhausted their administrative remedies.  Both motions are pending before the court.  Also pending are plaintiffs' Amended Complaint (document no. 6) and a Motion for Certification as a Class Action (document no. 9). Below is my disposition of each of these pleadings.

## 1. Motions to Object to Report and Recommendation and to Supplement Complaint (documents no. 13 & 14)

By these motions, plaintiffs seek to demonstrate that they have already pursued the claims asserted here through the NHSP's grievance process and, therefore, have exhausted their administrative remedies. Because the Motion to Object to Report and Recommendation (document no. 13) was filed simultaneously with the Motion to Supplement the Complaint (document no. 14), and because both make principally the same argument, I will consider them jointly and construe the objection as a motion for reconsideration. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (requiring pro se pleadings to be held to a less stringent standard). After duly considering the assertions presented in both motions, I conclude that plaintiffs indeed exhausted their administrative remedies and that the relief requested in the motions -- that their complaint be considered because they have satisfied the exhaustion requirement of 42 U.S.C. § 1997e(a) (Supp. 1997) -- is warranted. Accordingly, both motions (documents no. 13 and 14) are granted.

## 2. The Amended Complaint (document no. 6)

As plaintiffs are proceeding pro se and in forma pauperis, their amended complaint (document no. 6) is before me for preliminary review. See United States District Court for the

2

District of New Hampshire Local Rule ("LR") 4.3(d)(2); see also 28 U.S.C. § 1915A (1997) (requiring prompt review of in forma pauperis pleadings filed by prisoners). Plaintiffs challenge the overcrowded conditions at the NHSP and allege numerous constitutional violations stemming from that overcrowding. Named as defendants in this civil rights action are Stephen Merrill, former Governor of New Hampshire, Paul Brodeur, Commissioner of the New Hampshire Department of Corrections, Michael Cunningham, Warden at the NHSP, and Roman Aquizap, Lance Messinger, Joseph Panarillo, Wayne Brock and Joyce Veon, all presumably officials at the NHSP. Fifteen (15) "John Doe" defendants and eleven (11) "Jane Doe" defendants are also listed. Each of these defendants is sued in his or her official and individual capacities.

Plaintiffs next designate as defendants, without naming them individually, all members of the New Hampshire Legislature. Finally, plaintiffs sue the following New Hampshire Superior Court judges and Supreme Court justice: Gillian Abramson, John Arnold, James Barry, Arthur Brennan, Patricia Coffey, Carol Conboy, Linda Dalianis, Peter Fauver, Douglas Gray, William Groff, Bernard Hampsey, Philip Hollman, William Johnson, Robert Lynn, Philip Mangones, George Manias, Kathleen McGuire, Kenneth McHugh, Bruce Mohl, Walter Murphy, Joseph Nadeau, James O'Neill, III, Harold Perkins, Peter Smith, Larry Smukler, David Sullivan

3

and Robert E.K. Morrill.  All of these defendants are sued in their official capacities only, for injunctive relief.

Plaintiffs have properly invoked this court's jurisdiction, see 28 U.S.C. § 1343(3), and make the following claims against the various defendants.

### (a) Overcrowding at the NHSP

Plaintiffs' principal claim in this civil rights action is a challenge to the conditions of confinement at the NHSP stemming from its excessive population.  Plaintiffs allege that the NHSP has been overcrowded for at least twelve years, and that it currently has at least twice the number of inmates it was designed to hold.  They contend that this overcrowding has been caused by the New Hampshire Legislature enacting tougher criminal laws (and corresponding penalties), by New Hampshire judges imposing longer sentences in accordance with those laws, and by the Commissioner of Corrections, defendant Paul Brodeur, failing to exercise his authority under New Hampshire Rev. Stat. Ann. ("RSA") 651:25 (1996) to release eligible prisoners.  Plaintiffs assert that this overcrowding has caused numerous inadequate conditions at the prison which amount to "cruel and unusual punishment" in violation of the Eighth Amendment.

The Eighth Amendment protects prisoners from punishments which "'involve the unnecessary and wanton infliction of pain' or

4

are grossly disproportionate to the severity of the crime."
Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (citations omitted).
These principles apply to the conditions of a prisoner's
confinement and require that the conditions within a prison
comport with "contemporary standard[s] of decency" to provide
inmates with "the minimal civilized measure of life's
necessities." Id. at 347; see also Farmer v. Brennan, 511 U.S.
825, 832 (1994)(explaining that both the treatment of prisoners
and the conditions of their confinement are subject to scrutiny
under the Eighth Amendment). And so, while "'the Constitution
does not mandate comfortable prisons,'" it also "does not permit
inhumane ones." Id. (quoting Rhodes, 452 U.S. at 349); see
generally Rhodes, 452 U.S. at 347-49 (explaining how restrictive,
even harsh, conditions that do not inflict unnecessary pain or
disproportionate punishment are constitutional).

To state a claim for an Eighth Amendment violation
challenging the conditions of confinement, plaintiffs must
contend both that the punishment inflicted was "cruel and
unusual," i.e., that the deprivation sustained was objectively
"sufficiently serious," and that the official who administered
the punishment was "deliberately indifferent" to the inmate's
needs when the deprivation occurred. See Wilson v. Seiter, 501
U.S. 294, 298, 303 (1991) (holding that an Eighth Amendment claim

5

has both an objective and a subjective component); see also DesRosiers v. Moran, 949 F.2d 15, 18-19 (1st Cir. 1991) (applying Wilson's objective/subjective test to an Eighth Amendment claim for denial of necessary medical care). A challenged condition of confinement may be "sufficiently serious" standing alone or in combination with other conditions, "but [if in combination] only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise. . .." Wilson, 501 U.S. at 304. An official is "deliberately indifferent" to the effect the conditions are having on inmates when the official is actually aware of the substantial risk of serious harm the conditions are creating. See Farmer v. Brennan, 511 U.S. 825, 836-37 (1994) (defining "deliberate indifference" as requiring the official to be both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [to] also draw the inference"). Thus, there is no Eighth Amendment claim simply because prison conditions are objectively inhumane; rather the claim arises only when officials inflict "cruel and unusual punishment" by knowing of and disregarding "an excessive risk to inmate health or safety." Id. at 837, 838 (holding that the official must be subjectively aware of the risk before constitutional liability attaches).

6

Here plaintiffs list numerous conditions which the overcrowding has allegedly caused: inadequate furnishings (cells, pods, dining facilities); inadequate ventilation; faulty heating and cooling systems; inadequate lighting; excessive noise; inadequate sanitation facilities; insufficient educational and rehabilitative program opportunities; inadequate recreation areas; inadequate food (insufficient quality and quantity); inadequate medical care; and inadequate protection from violent inmates. Remarkably similar claims were made in Wilson, where the court clarified that the "overall conditions" cannot rise to the level of an Eighth Amendment violation unless a specific human need was deprived as a result. See Wilson, 501 U.S. at 304-05. Plaintiffs contend that the numerous inadequacies are causing health problems (e.g., visual, dietary, pulmonary) and safety risks. Since I must accept these allegations as true at this preliminary stage, I find that the identified inadequacies pass the threshold test of an objectively serious enough deprivation because of the alleged effects they are having on the health and welfare of inmates. Cf. id. at 305, 306 (recognizing that some claims may fail the threshold test individually but in combination may pass); see also Del Raine v. Williford, 32 F.3d 1024, 1033-36 (7th Cir. 1994) (citing cases which declined to summarily dismiss challenges to conditions of confinement because

7

they presented triable issues of fact).

I also find that plaintiffs have shown the prison officials have acted with the requisite "deliberate indifference" to the overcrowded conditions at the prison to satisfy the subjective component of an Eighth Amendment claim. Wilson made clear that systemic challenges to the conditions of confinement may be made, despite the "state of mind" requirement. See Wilson, 501 U.S. at 301-02 (explaining that the intent element required for a viable Eighth Amendment claim is implicit in the word "punishment" and must be uniformly applied). Plaintiffs allege that officials have known about the prison's excessive population for over twelve years and yet have not reduced the inmate population nor expanded the facility. Plaintiffs also contend that defendants continually force inmates to crowd into pods, knowing that sanitation, ventilation, lighting, noise and protection problems had resulted and would continue to occur. Again accepting these assertions as true, I conclude that they adequately demonstrate that prison officials actually knew of plaintiffs' substantial risk of being seriously harmed by the overcrowded conditions. See e.g. Del Raine, 32 F.3d at 1036-38 (recognizing that "deliberate indifference" if a fact-based inquiry which should not be summarily disposed of without an adequate record).

With both components of an Eighth Amendment violation

alleged, the overcrowding claim may proceed.  See LR 4.3(d)(2) (allowing service of complaints which state a claim and are neither frivolous nor malicious).  Plaintiffs assert this claim against all defendants; however, the alleged inadequacies caused by the overcrowding only implicates the prison officials.  Although respondeat superior liability is not available under § 1983, see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978), plaintiffs assert that Brodeur and Cunningham actually know of the overcrowded conditions and yet continue to fail to correct the situation.  This allegation affirmatively links them to the unconstitutional conditions at the NHSP for purposes of § 1983 liability.  See Bowen v. City of Manchester, 966 F.2d 13, 20 (1st Cir. 1992) (citing authority to explain how supervisory liability arises).  Similarly, plaintiffs have implicated the Jane and John Doe defendants by alleging that they too are responsible for the inadequacies listed in the complaint.  See Dewey v. Univ. of N.H., 694 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983) (holding that a civil rights complaint must state "who did what to whom and why"); see also Fed. R. Civ. P. 8(f) (requiring that pleadings be construed to effect "substantial justice") and Fed. R. Civ. P. 15(c)(3) (allowing pleadings to be amended to change the name of a party).

Finally, plaintiffs charge defendants Adquizap, Messinger

9

and Brock with failing to provide sufficient and/or adequate program opportunities, and defendants Panarillo and Veon with failing to provide necessary medical care. These allegations, generously construed, also state prima facie § 1983 claims against Acquizap, Messinger, Brock, Panarillo and Veon for Eighth Amendment violations caused by the overcrowding of the NHSP. Accordingly, I conclude that an Eighth Amendment claim brought pursuant to 42 U.S.C. § 1983 may proceed against all the prison official defendants.

On the other hand, plaintiffs assert this Eighth Amendment overcrowding claim against the New Hampshire Legislature (the "legislative defendants") and several New Hampshire judges (the "judicial defendants"). Plaintiffs claim that the legislative and judicial defendants are responsible for the overcrowded conditions at the NHSP, because they have enacted and enforced, respectively, laws which have caused the prison population to increase. Neither the legislative defendants nor the judicial defendants are otherwise accused of being responsible for the alleged unconstitutional conditions at the NHSP. Both the legislative defendants and the judicial defendants enjoy immunity, however, for passing laws and ordering sentences in accordance with those laws, because both alleged activities are exercises of their respective official functions. See Miles-Un-

10

<u>Ltd., Inc. v. New Shoreham, RI</u>, 917 F. Supp. 91, 97 (D.N.H. 1996) (citing authority to explain state legislators' immunity for those actions essential to the legislative process itself); <u>see also</u> <u>Boyd v. Biggers</u>, 31 F.3d 279, 284 (5th Cir. 1994) (explaining how the doctrine of absolute immunity shields judges from suit for the proper exercise of their official functions). Certainly passing laws and applying those laws are each well within the respective bounds of the official duties of the legislative defendants and the judicial defendants to warrant extending immunity to them here. The Eighth Amendment claims against these defendants, therefore, should be dismissed, and I will so recommend in a Report and Recommendation issued simultaneously herewith.

(b) <u>Denial of Access to the Courts</u>

Ancillary to the overcrowding claim (and allegedly somehow caused by it) is plaintiffs' claim that they have been denied their right to access the courts. Specifically, plaintiffs contend that they are not given enough time in the library to prepare filings in a timely fashion, that the Protective Custody Inmates are given even less time, that inmates who assist other inmates in preparing legal materials are punished, that the prison does not allow sufficient storage (presumably within the cells) for personal legal materials, and that photocopying

11

charges are prohibitively high.  While plaintiffs enjoy a fundamental right to access the courts, see Bounds v. Smith, 430 U.S. 817, 821 (1977) (recognizing that prisoners have a fundamental right to access the courts), they must allege that they have suffered an "actual injury" from the alleged denial, by "demonstrat[ing] that the alleged shortcomings . . . hindered [their] efforts to pursue a legal claim."  Lewis v. Casey, __ U.S. __, 116 S. Ct. 2174, 2179, 2180 (1996).

Among plaintiffs' grievances, only the claimed time delay rises to the requisite level of "impairment" to state a constitutional claim.  Plaintiffs contend that it took them three years to file the instant complaint, and that summary judgment was entered against them in a prior action because of their inability to file a timely objection.  If these allegations are true, they demonstrate that their attempts to seek legal redress for the challenged conditions of their confinement have in fact been hindered to satisfy the "actual injury" requirement of Lewis.  See id.

The other grievances, however, fail to make such a showing. The Constitution only mandates that prisoners be provided with "the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Id. at 2182.  Restricted use of the library,

particularly for inmates at a higher security classification like those in the Protected Custody Unit, limited storage space and photocopying charges, while perhaps burdensome, do not prevent complaints from being filed and, in fact here, have not prevented plaintiffs from bringing their grievances before the court. See id. at 2180 (holding that no particular methodology is required so long as inmates can petition the court to attack their sentences or challenge the conditions of their confinement); see also Carter v. Fair, 786 F.2d 433, 435 (1st Cir. 1986) (applying Bounds to explain that prisons must only provide enough assistance to protect the inmate's ability to prepare pleadings).

Finally, plaintiffs assert that the NHSP punishes inmates who provide legal assistance to other inmates. While punishment in retaliation for exercising the right to access the courts is unconstitutional, see McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (holding that transfer made in response to an inmate's exercise of his right to access the courts can be the basis for a § 1983 claim), plaintiffs have not alleged any facts to show, or to suggest the inference, that any one of them has endured such treatment. Bald allegations and conclusory statements, unsupported by sufficient facts, cannot state a claim for a civil rights violation. See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990) (explaining that a civil rights

13

complaint must plead specific instances of discriminatory or unconstitutional conduct by particular individuals to prevail). I, therefore, cannot see any injury actually suffered as required to state an access to courts claim.

Accordingly, I conclude that plaintiffs have stated a single claim for a deprivation of their right to access the courts, based on the alleged time delay in preparing legal documents. This claim has been asserted, and may proceed, against defendants Brodeur, Cunningham and the Does.

### (c) Parole Requirements/Release

Plaintiffs' last contention raised in this complaint is that defendants have not released prisoners on parole and thereby reduced the inmate population to eliminate at least some of the inadequate, unconstitutional conditions caused by the overcrowding. Plaintiffs allege that defendants Brodeur and Merrill have conspired to keep the prison overcrowded, by agreeing that Brodeur will not exercise his authority to release inmates on parole pursuant to RSA 651:25. Plaintiffs further allege that the prison's requirements that inmates obtain a job and a place to live prior to being released on parole is unconstitutional, because these requirements are extremely difficult to meet and usually cannot be met, which exacerbates the overcrowding problem at the prison.

14

I simply fail to see how these allegations state a constitutional violation distinct from plaintiffs' general complaint regarding the overcrowded condition of the NHSP. Although plaintiffs cite the Fourteenth Amendment in their complaint, there is no due process right to parole under New Hampshire law. See Wellington v. Brodeur, No. 96-189-M, slip op. at 5 (D.N.H. Dec. 30, 1996) (citing authority to explain that prisoners have no constitutionally protected liberty interest in being paroled). While plaintiffs could challenge the constitutionality of the parole eligibility procedures themselves, see e.g. Clark v. Thompson, 960 F.2d 663, 664-65 (7th Cir. 1992) (citing authority for proposition that challenges to effect procedural improvements in parole determinations are properly brought under § 1983), they in fact are not claiming that the parole requirements violate due process or are discriminatorily enforced. Finally, plaintiffs provide absolutely no facts to demonstrate the alleged conspiracy between defendants Merrill and Brodeur. I decline to accept such unsubstantiated assertions, see Correa-Martinez, 903 F.2d at 53, and I will recommend that the parole requirements/release claim be dismissed in the Report and Recommendation issued simultaneously herewith. As this is the only claim asserted against defendant Merrill, I also will recommend that he be

15

dismissed from this action.

**3.  Motion for Class Certification (document no. 9)**

Plaintiffs have filed a Motion for Class Certification, claiming that all inmates at the NHSP are suffering from Eighth Amendment violations caused by its overcrowded conditions. Whether a case may be certified as a class action depends on a "'rigorous analysis of the particular facts of the case,'" In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1530 (D. Mass. 1991) (quoting General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982)), but remains "an initial determination that must be made without inquiry into the merits of the plaintiffs' claims." Id. at 1529 (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974)). The Federal Rules require the court to rule on the class certification issue "as soon as practicable," and the court may alter or amend such a ruling at any time before the case is resolved on the merits. 2 Newberg, Newberg on Class Actions § 7.12 (3d ed. 1992).

Before a party may have a case certified as a class action, that party must overcome or satisfy the five-part test articulated in Federal Rule of Civil Procedure 23. First, the party must show all of the following:

> (1) the class is so numerous that
> joinder of all members is

16

impracticable ("numerosity");

(2) there are questions of law or fact common to the class ("commonality");

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and

(4) the representative parties will fairly and adequately protect the interests of    the class ("adequacy").

Fed. R. Civ. P. 23(a). Second, one of the criteria specified in Fed. R. Civ. P. 23(b) must be satisfied. See Shaw v. Mobil Oil Corp., 60 F.R.D. 566, 568 (D.N.H. 1973). Plaintiff bears the burden of proving the Rule 23 requirements have been met. See Bank of Boston, 762 F. Supp. at 1530.

While it appears that plaintiffs may be able to satisfy the criteria identified in Rule 23(a), I decline to grant plaintiffs' motion at this juncture. Defendants have not yet been served with the complaint and have not yet had an opportunity to answer it or to file an objection to plaintiffs' motion for class certification. Accordingly, plaintiffs' Motion for Class Certification (document no. 9) shall be held in abeyance until defendants have been given an opportunity to respond to this action and that motion.

17

## CONCLUSION

Based on the foregoing analysis, plaintiffs' Objection to Report and Recommendation (document no. 13) and plaintiffs' Motion to Supplement Complaint (document no. 14) are granted. Plaintiffs' Motion for Certification as a Class Action Lawsuit (document no. 9) shall be held in abeyance until defendants' response thereto has been filed. Plaintiffs' Amended Complaint (document no. 6) states claims under 42 U.S.C. § 1983 for an Eighth Amendment violation based on the overcrowded condition of the NHSP and for a deprivation of plaintiffs' right to access the courts. These two claims are properly asserted against defendants Brodeur, Cunningham, Acquizap, Messinger, Panarillo, Brock, Veon, and the Jane and John Does.

I, therefore, order the amended complaint (document no. 6) be served on defendants. Pursuant to the Agreement of Acceptance of Service entered into between the Clerk of Court and the Attorney General of the State of New Hampshire ("AG"), the Clerk's office is directed to forward to the AG's office, by certified mail return receipt request, copies of this order, the Report and Recommendation issued simultaneously herewith, the amended complaint (document no. 6), and the Motion for Certification as a Class Action (document no. 9). See LR

18

4.3(d)(2)(C). Within thirty days from receipt of these materials, the AG will submit to the court an Acceptance of Service notice specifying those defendants who have authorized the AG's office to receive service on their behalf. When the Acceptance of Service is filed, service will be deemed made on the last day of the thirty-day period.

As to those defendants who do not authorize the AG's office to receive service on their behalf or whom the AG declines to represent, the AG shall, within thirty days from receipt of the aforementioned materials, provide a separate list of the last known addresses of such defendants. The Clerk's office is instructed to complete service on these individuals by sending to them, by certified mail return receipt requested, copies of these same documents.

Defendants are instructed to answer or otherwise plead within twenty days of service.

Plaintiffs are instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on

the defendants by delivering or mailing the materials to them or their attorneys, pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge


Date:    November 5, 1997

cc:      Brian Smith, _pro se_
         John Bill, _pro se_
         Ronald Schultz, _pro se_
         Mark Gagnon, _pro se_
         Pete Provencher, _pro se_
         David Melvin, _pro se_
         Joseph Plumer, _pro se_
         Glenn Adams, _pro se_
         Timothy Wormald, _pro se_
         Kenneth Robertson, _pro se_
         Kevin Laurent, _pro se_
         Michael Wilson, _pro se_
         Ezequiel Berrocales, _pro se_
         Michael Dooling, _pro se_
         Norman Fazel, _pro se_
         Wallace Lowell, _pro se_
         Christopher Donnelly, _pro se_
         Larry Ralph, _pro se_