In re G.I. INDUSTRIES, INC., a Utah corporation, p/k/a Yellow Rose Corporation; Conejo Enterprises, Inc., a California corporation, Debtors.

Ronald L. Durkin, Chapter 11 Trustee for G.I. Industries, Inc., and Conejo Enterprises, Inc., Plaintiff–Appellee,

v.

Benedor Corporation, Defendant–Appellant.

No. 98–55846.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1999.

Filed March 9, 2000.

Sara Pfrommer and David J. Richardson, Sheppard, Mullin, Richter & Hampton, Los Angeles, California, for the plaintiff-appellee.

William H. Hair, Gerald M. Etchingham, and Susan M. Seemiller, Nordman, Cormany, Hair & Compton, Oxnard, California, for the defendant-appellant.

Before: BRUNETTI and TASHIMA, Circuit Judges, and SCHWARZER,[1] District Judge.

BRUNETTI, Circuit Judge:

This appeal arises out of an executory contract between Conejo Enterprises, Inc., ("Conejo") and Benedor Corporation ("Benedor"). Conejo's trustee, Ronald L. Durkin ("the trustee"), filed a motion with the bankruptcy court to reject the contract. The bankruptcy court approved the rejection, finding that the contract was "burdensome and onerous to Conejo." Based on the rejection, Benedor submitted a proof of claim to the bankruptcy court, arguing that the rejection of an executory contract creates a statutory breach of contract action under 11 U.S.C. § 365(g) that is independent of the underlying contract's validity. The bankruptcy court disagreed and found that the contract was invalid following a five-day trial on the merits. The district court affirmed the bankruptcy court's judgment on appeal. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm.

## I.

In May 1993, the parties entered into an agreement that required Conejo to deliver a specified amount of "greenwaste" to Benedor for disposal every day over a twenty-one year period. The entire agreement consisted of a one-page chart entitled "GI Proposal" ("agreement") that specified only the amount of greenwaste that Conejo was required to deliver to Benedor and the price of Benedor's disposal services. The agreement required Conejo to pay $20 for each ton of greenwaste ("tipping fees") specified in the contract, regardless of whether the greenwaste was actually delivered to Benedor for disposal. Benedor was the only party that signed the agreement.

Approximately three months after entering into the agreement, Benedor sued Conejo in California state court, alleging a state law breach of contract claim based upon Conejo's failure to pay the required $20 "tipping fees." Although the total damages under the agreement amount to only $26 million, Benedor argued that it was entitled to more than $63 million in damages due to Conejo's breach of a separate exclusivity agreement.

Conejo filed a petition for Chapter 11 bankruptcy in May 1994, and immediately

---

1. Hon. William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

attempted to remove the California state action to the bankruptcy court. *See Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 349 (9th Cir.1996) ("*Conejo II*"). The bankruptcy court originally granted Conejo's motion. However, on appeal, the district court remanded the breach of contract action to the state court based upon the mandatory abstention doctrine. *See id.* The district court's order was later affirmed because this Court held that a district court's remand order is not reviewable on appeal. *See id.* at 351.

Following the failure to remove the state court action, the trustee filed a motion with the bankruptcy court to reject the agreement in May 1994. The bankruptcy court granted the trustee's motion, finding that the contract was "burdensome and onerous to Conejo" and that the rejection was "within the sound business judgment" of the trustee.

Benedor responded to the rejection by filing a proof of claim based upon 11 U.S.C. § 365(g), the provision governing rejected executory contracts and unexpired leases. The trustee objected to Benedor's proof of claim, arguing that the contract was unenforceable against Conejo. As a result, the bankruptcy court proceeded with a five-day trial that inquired into the validity of the agreement. The bankruptcy court ultimately disallowed Benedor's entire claim under 11 U.S.C. § 502(b)(1), finding that the agreement was unenforceable due to a lack of mutual intent between the parties and a lack of consideration. The district court affirmed the bankruptcy court's judgment disallowing the claim. This appeal followed.

## II.

■ The bankruptcy court's interpretation of the Bankruptcy Code is reviewed de novo, *see California Franchise Tax Bd. v. Jackson (In re Jackson)*, 184 F.3d 1046, 1050 (9th Cir.1999), and we review the district court's decisions on an appeal from the bankruptcy court de novo applying the same standard of review applied by the district court. *See id.* We review the

bankruptcy court's findings of fact for clear error. *See Levander v. Prober (In re Levander)*, 180 F.3d 1114, 1118 (9th Cir. 1999).

### A.

■ Benedor first contends that the bankruptcy court lacked jurisdiction to consider the validity of the agreement because it had already approved the trustee's rejection of the contract, creating a conclusive statutory breach of contract claim in favor of Benedor. Benedor's argument, however, is flawed because the bankruptcy court's authority to consider the validity of a rejected contract is not a jurisdictional matter. Rather, the question of whether the bankruptcy court may inquire into the validity of the rejected contract is a substantive issue of statutory interpretation under 11 U.S.C. §§ 365, 502.

■ We review de novo whether the bankruptcy court possessed subject matter jurisdiction to enter a judgment. *See Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters.)*, 90 F.3d 1472, 1475 (9th Cir.1996). While the bankruptcy court does not have jurisdiction over the breach of contract claim filed in California state court, *see Conejo II*, 96 F.3d at 350, the bankruptcy court does have core jurisdiction over the proof of claim filed by Benedor in the bankruptcy proceeding. *See id.* at 353 ("[I]f Benedor filed a proof of claim, the bankruptcy court would have core jurisdiction over the claim under 28 U.S.C. § 157(b)(2)(B), allowance or disallowance of claims.").

The plain language of the Bankruptcy Code supports the bankruptcy court's jurisdiction in this case. A bankruptcy court is allowed to "hear and determine all cases under title 11 and all core proceedings arising under title 11, . . . and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). The filing of a proof of claim is the prototypical situation involving the "allowance or disallowance of claims against the estate," a core proceeding un-

der 28 U.S.C. § 157(b)(2). *See, e.g., Continental Nat'l Bank v. Sanchez (In re Toledo),* 170 F.3d 1340, 1349–50 (11th Cir.1999) (stating that a proof of claim is within the bankruptcy court's jurisdiction even if the underlying claim is based on state law); *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987) ("[A] claim filed against the estate is a core proceeding because it could arise only in the context of a bankruptcy."). Therefore, there is no question that the bankruptcy court had jurisdiction over the proof of claim itself because it is a core matter; rather, the issue is whether the bankruptcy court had jurisdiction to determine the validity of the underlying agreement supporting Benedor's claim.

■ By filing the proof of claim, Benedor voluntarily subjected the agreement to the bankruptcy court's jurisdiction as well, because the agreement is an integral component of the bankruptcy court's consideration of Benedor's claim. Under Bankr. Rule 3001, a creditor filing a proof of claim must attach a copy of the underlying contract to establish prima facie evidence of the validity of the contract. This requirement would be meaningless unless the bankruptcy court's jurisdiction extended to consideration of the underlying contract supporting the claim. In other words, a bankruptcy court can only consider an objection to a claim and thus overcome the presumption of its validity by examining the contract itself and the circumstances surrounding its formation. *See Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage),* 178 B.R. 222, 226 (9th Cir. BAP 1995) ("Upon the filing of an objection, the objecting party 'must produce evidence tending to defeat the claim that is of a probative force equal to that of the creditor's proof of claim.' ") (quoting *In re Simmons,* 765 F.2d 547, 552 (5th Cir.1985)), *aff'd without opinion,* 91 F.3d 151 (9th Cir.1996).

Thus, the district court correctly concluded that "[t]he determination of the validity of the contract for the purposes of disallowing the 502(g) based claim, is basically a non-core issue of state breach of contract being subsumed into a core proceeding (regarding allowance of claim) and thereby coming under the jurisdiction of the bankruptcy court."

## B.

■ Benedor's second contention is that the trustee lacks standing to challenge the validity of a rejected contract. Specifically, Benedor points to the general rule that an executory contract does not become part of the bankruptcy estate unless the trustee affirmatively assumes it. *See Otto Preminger Films, Ltd. v. Qintex Entertainment, Inc. (In re Qintex Entertainment, Inc.),* 950 F.2d 1492, 1495 (9th Cir. 1991). Therefore, Benedor argues, the trustee lacks standing to object to any contract that is not part of the bankruptcy estate. *See Chbat v. Tleel (In re Tleel),* 876 F.2d 769, 770 (9th Cir.1989). Benedor's argument would be meritorious if the trustee was attempting to challenge the contract *and* Benedor had failed to file a proof of claim. However, the filing of a proof of claim confers standing upon the trustee because it brings the validity of an underlying contract within the jurisdiction of the bankruptcy court and thus invokes the trustee's duty to object to improper claims.

The plain language of the Bankruptcy Code supports our position. Under 11 U.S.C. § 502(a), "[a] claim or interest . . . is deemed allowed, unless a party in interest . . . objects." Once Benedor filed the proof of claim, the trustee had standing to challenge the claim under 11 U.S.C. § 502(a) because a trustee is a "party in interest." *See Lawrence v. Steinford Holding B.V. (In re Dominelli),* 820 F.2d 313, 316 (9th Cir.1987) ("[T]he trustee is a party in interest who may object to a claim under section 502(a)."). The trustee's standing to object to a proof of claim is further supported by the text of 11 U.S.C. § 704(5), the provision outlining a trustee's duties, which requires the trustee to "examine proofs of claim and object to the allowance of any claim that is improper." Thus, under the plain language of the Bankruptcy Code, Benedor's filing of a

proof of claim conferred standing upon the trustee to object to that claim.

## III.

■ Benedor's final contention is that the trustee's rejection of an executory contract pursuant to 11 U.S.C. § 365(g) conclusively establishes a statutory breach of contract that precludes a bankruptcy court from inquiring into the validity of the underlying contract. Benedor relies heavily on the statutory text of section 365(g), which states that "the rejection of an executory contract or unexpired lease of the debtor constitutes a *breach of such contract or lease.*" 11 U.S.C. § 365(g) (emphasis added). Benedor argues, therefore, that the rejection of an executory contract contravenes the *contract as written* and creates an independent and separate cause of action. Any other interpretation, Benedor claims, renders the "breach" language in section 365(g) superfluous.

### A.

The text of sections 365 and 502 does not support Benedor's position. While section 365 states that the rejection of an executory contract results in a statutory breach of that contract, the analysis does not end there. Rather, the next step is to turn to section 502(g), which governs the allowance or disallowance of a claim after the contract has been rejected. Section 502(g) states:

> A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

The language in section 502(g) is unambiguous and does not contain any language restricting a bankruptcy court from subjecting a rejected contract to the provisions governing the allowance and disallowance of claims. Instead, the language in section 502(g) contains a clear command that all claims arising out of unassumed executory contracts are subject to allowance or disallowance under 11 U.S.C. § 365(a)-(e).

■ As one of the grounds for disallowing a claim, section 502(b)(1) states that a claim is "unenforceable against the debtor and the property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." This Court has previously held that "[a] claim cannot be allowed [under section 502(b)(1)] if it is unenforceable under nonbankruptcy law." *Diamant v. Kasparian (In re Southern Cal. Plastics, Inc.),* 165 F.3d 1243, 1247 (9th Cir.1999). A trustee is therefore allowed to raise any state law defenses to the claim. *See id.; see also Johnson v. Righetti (In re Johnson),* 756 F.2d 738, 741 (9th Cir.1985) ("[I]n proof of claim litigation under 11 U.S.C. § 502(b)(1), the validity of the claim is determined under state law."). *But see O'Neill v. Continental Airlines, Inc. (In re Continental Airlines),* 981 F.2d 1450, 1459 (5th Cir.1993) ("To assert that a contract effectively does not exist as of the date of rejection is inconsistent with deeming the same contract breached."). In this case, the bankruptcy court found that Conejo's state law defenses of lack of mutual intent and consideration invalidated the contract.[2] Under the applicable law of this Circuit, these state law defenses constitute a valid ground for disallowing a claim under section 502(b)(1) *regardless of whether the trustee had previously rejected the contract.*[3]

---

**2.** We decline to address whether the bankruptcy court's conclusions regarding the validity of the contract were correct. The parties do not challenge the bankruptcy court's findings that the contract lacked mutual intent and consideration. Therefore, we need not address the validity of the contract on appeal.

**3.** It is not necessary for the bankruptcy court expressly to reserve its right to later assess the

## B.

■ The structure of the Bankruptcy Code provides further support for our conclusion that a bankruptcy court may examine the validity of a rejected contract during the claims process. A bankruptcy court's hearing on a motion to reject is a summary proceeding that involves only a cursory review of a trustee's decision to reject the contract. Specifically, a bankruptcy court applies the business judgment rule to evaluate a trustee's rejection decision, while it would employ a much more probing standard in adjudicating the validity of a contract. *See NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 523, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (recognizing that the business judgment rule is used in reviewing motions to reject executory contracts).

■ Based on the nature of a motion to reject and its complementary proceedings, it is inappropriate for the court to resolve questions involving the validity of a contract at the time of rejection. As the Second Circuit noted in *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095 (2d Cir.1993), "permitting a bankruptcy court to rule conclusively on a decisive issue of breach of contract would render the use of 'business judgment' ... unnecessary." *Id.* at 1099. *Orion* correctly recognizes that adjudicating the validity of a contract at the time of rejection would turn a summary proceeding into a full trial on the merits, a result that would be inconsistent with the procedures found in the Bankruptcy Code. Instead, our approach gives effect to the plain language of the Bankruptcy Code and allows a bankruptcy judge to postpone consideration of the validity of a contract until a full adversary proceeding can take place. This approach better conforms with the structure of the code.

validity of the contract at the time it grants the trustee's motion to reject. Rather, the plain language of section 502(b)(1) indicates

## C.

The rejection of an executory contract creates a statutory breach under section 365(g). However, the statutory breach is not final and conclusive because it is still subject to the claims process under section 502. Therefore, in accordance with the statutory language and the structure of the Bankruptcy Code, a bankruptcy judge may adjudicate the validity of an executory contract pursuant to a valid proof of claim even after the trustee has rejected that contract.

**AFFIRMED.**

that a bankruptcy court is free to examine the validity of the contract even in the absence of a reservation.