# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TA CHONG BANK LTD.,
            *Plaintiff-Appellant,*

            v.

HITACHI HIGH TECHNOLOGIES
AMERICA, INC., a Delaware
corporation,

            *Defendant-Appellee.*

No. 08-17007

D.C. No.
CV-08-02452-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
November 3, 2009—San Francisco, California

Filed July 7, 2010

Before: Alfred T. Goodwin and William A. Fletcher,
Circuit Judges, and Richard Mills, District Judge.*

Opinion by Judge Mills

---

*The Honorable Richard Mills, Senior United States District Judge for the Central District of Illinois, sitting by designation.

9647

**COUNSEL**

James S. Monroe, Monroe Law Group, San Francisco, California, for plaintiff-appellant Ta Chong Bank Ltd.

Richard C. Vasquez and Avin P. Sharma, Vasquez, Benisek & Lindgren LLP, Lafayette, California, for defendant-appellee Hitachi High Technologies America, Inc.

**OPINION**

MILLS, District Judge:

Ta Chong Bank ("the Bank") filed a complaint wherein it asserted several claims against Hitachi High Technologies America, Inc. ("Hitachi"). Those claims were based on the Bank's interest in the accounts receivable of a third party, CyberHome Entertainment, Inc. ("CyberHome"), pursuant to certain factoring agreements entered into by those entities. Although the factoring agreements provided that Hitachi was to pay the Bank, Hitachi made payment directly to Cyber-Home, several months before CyberHome filed for Chapter 7 bankruptcy.

The district court dismissed the Bank's claims, reasoning that they were based solely on its interest in CyberHome's accounts receivable, which the bankruptcy court had determined to be property of CyberHome's bankruptcy estate.

We affirm.

## I.  BACKGROUND

In August and September of 2005, Hitachi purchased a large number of DVD players from CyberHome for approxi-

mately $1.2 million. Since May 2004, the Bank had entered into a series of factoring agreements whereby it agreed to purchase from CyberHome certain of CyberHome's accounts receivable. CyberHome assigned to the Bank all of its right, title and interest in and to all amounts due from Hitachi under the invoices. On or about August 18, 2005, the Bank and CyberHome gave Hitachi notice in writing that effective September 1, 2005, CyberHome's future invoices to Hitachi would bear a notice that such invoices were assigned to the Bank. The notice instructed Hitachi that all payments on those CyberHome invoices must be made directly to the Bank. Despite this assignment, in January 2006, Hitachi paid Cyber-Home the full amount owed for the DVDs. Neither the Bank nor the CIT Group/Commercial Services, Inc. ("CIT"), which handled the processing of certain accounts receivable factored by the Bank, received any portion of the payment made to CyberHome. The payment was made to CyberHome without the Bank's or CIT's knowledge or consent.

On September 5, 2006, eight months after CyberHome was paid in full by Hitachi, CyberHome filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Northern District of California. The Bank has made demand on Hitachi for payment of the $1,214,852.20 that it paid to CyberHome, but Hitachi has not made any payment to the Bank.

On December 19, 2006, the Chapter 7 Trustee for Cyber-Home's bankruptcy estate filed an adversary proceeding against the Bank asserting several claims, including a claim to avoid the Bank's security interest in property of the Cyber-Home bankruptcy estate, including its accounts receivable. The trustee claimed that the accounts receivable constituted a preferential transfer and that the Bank had failed to perfect its security interest prior to 90 days before the bankruptcy petition.

On December 22, 2006, the Bank filed a secured proof of claim in the CyberHome bankruptcy case in the amount of

$83,000,000 for amounts due under several credit accounts extended to CyberHome, including the accounts receivable at issue in this case. On February 2, 2007, the Bank filed a counterclaim for (1) fraud, (2) negligence, and (3) breach of contract in the adversary proceeding. The Bank attached its previously filed proof of claim as an exhibit to the counterclaim. The trustee subsequently moved for summary adjudication against the Bank.

On June 13, 2007, the bankruptcy court entered an order which, in part, advised account debtors to disregard any request from the Bank. The order provided that only the trustee was authorized to collect any receivables. The Bank did not oppose the trustee's motion for summary adjudication, and the bankruptcy court granted the motion on August 10, 2007. The Bank did not appeal the bankruptcy court's order.

Seven months after the bankruptcy court's order granting the trustee's motion for summary adjudication, the Bank brought suit in state court against Hitachi. The complaint asserted several causes of action under California law, including (1) goods sold and delivered, (2) open book account, and (3) account stated. The Bank's complaint sought payment from Hitachi of the $1.2 million that Hitachi previously paid to CyberHome. The Bank also attached as exhibits invoices between Hitachi and CyberHome. Hitachi removed the action to federal court.

The district court granted Hitachi's motion to dismiss the case for failure to state a claim and entered a judgment of dismissal. In granting the motion, the court found that by filing the action, the Bank was attempting an "end run around" the bankruptcy process and that the case was "an improper appeal of the bankruptcy court's order." The district court also found that the bankruptcy court's order was res judicata as to the Bank's interest in CyberHome's accounts receivable. It held that the bankruptcy court implicitly found the $1.2 million at

issue to be part of the bankruptcy estate because it had been paid during the pendency of the bankruptcy court's order.

The Bank subsequently filed a motion pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the previous judgment. The Bank contended that the district court had erred in finding that Hitachi paid $1.2 million to CyberHome during the bankruptcy proceedings. The district court denied the motion to alter or amend the judgment, finding that the error regarding timing in its prior order "did not rise to the level of 'manifest error' requiring that the judgment be vacated."

## II.  DISCUSSION

We have jurisdiction pursuant to 28 U.S.C. § 1291. On appeal, the Bank contends that the district court erred in determining that the $1.2 million that Hitachi paid to CyberHome was part of CyberHome's bankruptcy estate. The Bank also disputes that, by filing its proof of claim in the bankruptcy proceeding, it consented to the exclusive jurisdiction of that forum as to any claim for the $1.2 million paid by Hitachi to CyberHome. The Bank further asserts that the district court abused its discretion in denying the Bank's motion to alter or amend the judgment, after the court erroneously found in its initial order that Hitachi's payment to CyberHome was made during the course of CyberHome's bankruptcy.

### A.  Standard of review

A district court's decision to grant a motion to dismiss under Rule 12(b)(6) is reviewed de novo. *See Movsesian v. Victoria Versicherung AG*, 578 F.3d 1052, 1056 (9th Cir. 2009). "All well-pleaded factual allegations are to be construed in the light most favorable to the pleader, and accepted as true." *Id.* The denial of a motion under Rule 59(e) to alter or amend the judgment is reviewed for abuse of discretion.

*See McQuillion v. Duncan*, 342 F.3d 1012, 1014 (9th Cir. 2003).

B.    *The bankruptcy proceeding and the Bank's state law claims*

(1)

**[1]** The California Commercial Code is applicable to determine the rights and duties of the parties in this case. Division 9 (Secured Transactions) applies, *inter alia*, to "[a] transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract;" and "[a] sale of accounts, chattel paper, payment intangibles, or promissory notes." *Cal. Com. Code § 9109(a)(1)*, *(3)*. "Except as otherwise provided . . . , while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral." *Cal. Com. Code § 9301(1)*. CyberHome was located in California at all relevant times. In order to perfect its interest in the CyberHome accounts assigned to the Bank, the Bank was required to file a financing statement. *Cal. Com. Code § 9310(a)*.

The Bank contends that, after receiving notice, Hitachi was required to pay the invoices directly to CIT, on the Bank's behalf. Section 9406(a) provides:

> Subject to subdivisions (b) to (i), inclusive, an account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. *After receipt of the notification, the account debtor may discharge its obliga-*

*tion by paying the assignee and may not discharge the obligation by paying the assignor.*

*Cal. Com. Code § 9406(a)* (emphasis added). Hitachi elected to ignore the notices and its duties under § 9406 and paid CyberHome instead. The Bank asserts that Hitachi is therefore directly liable for the full amount of the payment that Hitachi made in satisfaction thereof to CyberHome. The Bank argues that this liability is independent of the accounts receivable.

[2] The Bank claims that CyberHome's bankruptcy estate has no property interest in the Bank's claims against Hitachi. A debtor's bankruptcy estate consists of "all legal or equitable interests of the debtor in property" at the time the case is commenced. *See* 11 U.S.C. § 541(a)(1). The Bank argues that, as of the date of its bankruptcy petition, CyberHome had no conceivable property interest in either the invoices or the Bank's claims against Hitachi. CyberHome had received payment in full on the invoices from Hitachi prior to the filing of its bankruptcy petition and was the beneficiary of this improper payment.

[3] The Bank argues, as a consequence, that the trustee's preference action against the Bank is irrelevant to its claims against Hitachi. Under the California Commercial Code, the Bank was required to perfect its security interest in the CyberHome accounts receivable in order to establish the priority of its interest as against competing secured creditors that were perfected and any future bankruptcy trustee. The Bank filed its financing statement within 90 days of CyberHome's bankruptcy filing. The trustee filed a preference avoidance action against the Bank under 11 U.S.C. § 547(b)[1] and obtained an unopposed order granting a motion for summary adjudication on August 10, 2007. The Bank acknowledges that the effect

---

[1]Section 547(b) enables the trustee to avoid preferential transfers under certain circumstances.

of the bankruptcy court order was to avoid the financing statement filed by the Bank as a preference under § 547(b) and to thereafter avoid the Bank's security interest against the accounts receivable. *See* 11 U.S.C. § 544(a).[2] This made the Bank an unsecured creditor against the bankruptcy estate and permitted the trustee to collect all accounts receivable.

**[4]** The Bank contends, however, that the bankruptcy court order does not extend to or have any effect on the obligation at issue in this case, arguing that it arose pre-bankruptcy independently of the accounts receivable. The bankruptcy court order does nothing to limit or alter the Bank's rights with respect to the millions of dollars of transactions that occurred in the years prior to bankruptcy under the factoring agreements. Consequently, the order does not give the bankruptcy estate a property interest in either the subject invoices or the Bank's claims herein against Hitachi. CyberHome had no interest when its petition was filed because it had received payment in full. The trustee has no interest for the same reason.

Following the same line of logic, the Bank further asserts that a preference/lien action under 11 U.S.C. §§ 547(b) and 544(a) does not retroactively avoid a security interest as to past events and/or non-estate property. Instead, it is limited in its effect to property of the debtor that can be recovered by the avoidance statutes and property of the bankruptcy estate. The Bank contends that § 544(a) has no applicability to property in which the debtor has no interest, such as its claims against Hitachi.

The Bank claims that the bankruptcy court order expressly adheres to these limitations on the bankruptcy avoidance powers in limiting the scope of the order to cover only receiv-

---

[2]Section 544(a) provides, in part, that the trustee "may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable" by a creditor in certain instances.

ables, inventory and proceeds that are property of the bankruptcy estate. The effect of the court's order is to preclude the Bank from seeking to collect CyberHome's remaining receivables in competition with the trustee. The Bank maintains, however, that the order has no applicability to Hitachi's payment of $1.2 million directly to CyberHome, instead of to the Bank as was required, nearly eight months prior to CyberHome's bankruptcy filing.

(2)

Hitachi's response focuses on the Bank's proof of claim and counterclaim in the bankruptcy action. Hitachi claims that the Bank availed itself of the exclusive jurisdiction of the bankruptcy court for any claim as to the $1.2 million paid by Hitachi to CyberHome. Hitachi notes that when a creditor files a claim against a bankruptcy estate, the creditor subjects itself to the bankruptcy court's equitable power. *See Langenkamp v. Culp*, 498 U.S. 42, 44 (1990). If the creditor submits an agreement with its proof of claim to provide evidentiary support of the claim, then that agreement is subject to the bankruptcy court's jurisdiction. *See In re G.I. Industries, Inc.*, 204 F.3d 1276, 1280 (9th Cir. 2000). Citing *Reusser v. Wachovia Bank*, *N.A.*, 525 F.3d 855 (9th Cir. 2008), Hitachi claims that the decisions of the bankruptcy court apply to the property regardless of the parties involved. *See id.* at 861.

In support of its $83 million proof of claim, the Bank submitted its factoring agreements with CyberHome and a list of invoices between CyberHome and various companies. Hitachi alleges the Bank placed at issue in the bankruptcy proceeding its claim to monies paid or owed to CyberHome when it included the proof of claim and the same documents as exhibits to the counterclaim. In this case, the Bank references many of the same invoices on which it relied to support its claim. Hitachi asserts that the Bank cannot now argue that the $1.2 million did not pertain to the bankruptcy action after filing in

that court a proof of claim which included documentation of the factoring agreement and the invoices. Accordingly, Hitachi contends that the Bank consented to the resolution by the bankruptcy court of any claims regarding the moneys under the factoring agreement and the invoices.

(3)

**[5]** We are unable to conclude that the Bank possesses any claim separate and distinct from those which were adjudicated in the bankruptcy proceedings. Although the Bank purports to bring claims under California state law, those claims derive from Hitachi's obligation to pay the accounts receivable, which was determined to be part of CyberHome's bankruptcy estate. Accordingly, we are not persuaded by the Bank's contention that Hitachi's payment of $1.2 million to CyberHome means that CyberHome no longer has an interest in the matter and that Hitachi has incurred liability to the Bank unrelated to the accounts receivable, pursuant to § 9406(a).

Section 9406(a) does not impose liability distinct from the assigned accounts receivable. It merely states, in pertinent part, that a debtor "may not discharge the obligation by paying the assignor." *Cal. Com. Code § 9406(a)*. By paying the assignor, CyberHome, the $1.2 million, Hitachi did not create any new liability. Hitachi simply failed to discharge its pre-existing obligation to the Bank under the assigned accounts receivable. Even if Hitachi were required to make a second payment under § 9406(a), the second payment would be for the same obligation, which Hitachi failed to discharge through its payment to CyberHome. This obligation—accounts receivable for the purchase of DVDs—was among those addressed in the bankruptcy proceeding.

We are not persuaded by the Bank's assertion that Cyber-Home no longer has an interest in the matter because it has been paid the $1.2 million. Because Hitachi did not discharge

its obligation, CyberHome retained a property interest in that obligation, based on § 9318(b), which states:

> For purposes of determining the rights of creditors of, and purchasers for value of an account or chattel paper from, a debtor that has sold an account or chattel paper, *while the buyer's security interest is unperfected, the debtor is deemed to have rights and title to the account or chattel paper identical to those the debtor sold.*

*Cal. Com. Code § 9318(b)* (emphasis added).

Because the account assigned to the Bank was not extinguished by Hitachi's payment to CyberHome under § 9406(a), CyberHome's interest under § 9318(b) also was not extinguished. CyberHome's interest does not depend on whether it has received the $1.2 million, but on whether the obligation exists and whether the Bank's security interest was perfected. For purposes of the bankruptcy proceedings, § 9318(b) creates a property interest, as the bankruptcy court recognized in holding the accounts receivable to be part of the bankruptcy estate.

**[6]** Based on the foregoing, we conclude that there is an identity of claims between this case and the bankruptcy proceedings. Regardless of how the Bank's current claims are labeled, they are based on Hitachi's obligation to pay accounts receivable, which the bankruptcy court held to be within CyberHome's bankruptcy estate. *See Stratosphere Litigation L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142 n.3 (9th Cir. 2002) (stating that there is an identity of claims when two suits arise from "the same transactional nucleus of facts"). Our conclusion is bolstered by the fact that the Bank submitted to the bankruptcy court proof of the very same accounts receivable and factoring agreements at issue in this case. *See G.I. Industries,* 204 F.3d at 1279-80 (noting that by submitting an agreement with its proof of claim, a creditor

also subjects the agreement to the bankruptcy court's jurisdiction). Accordingly, the bankruptcy court's holding controls this case, even as to the Bank's claim's against Hitachi. *See Reusser*, 525 F.3d at 861 (observing that bankruptcy courts' jurisdiction extends to " 'all matters connected with the bankruptcy estate' ") (citation omitted).[3]

[7] The Bank asserts that applying the bankruptcy court's order so as to preclude the Bank's complaint against Hitachi would serve to immunize the latter from liability for its wrongful conduct without furthering any bankruptcy policy. We disagree with the suggestion that the district court's holding does not advance bankruptcy policy. A finding that Hitachi is liable to the Bank may well affect the bankruptcy proceedings because Hitachi would likely then seek repayment of its $1.2 million from CyberHome. Accordingly, a ruling on the Bank's claims here could potentially reorder the preference in which the creditors, including the Bank, are paid. As the district court observed, moreover, the Bank's complaint in this case appears to be an effort to execute an end-run around the bankruptcy court's adjudication and the related distribution of CyberHome's bankruptcy estate. A decision in favor of the Bank might serve to encourage litigants to attempt to seek relief outside of the bankruptcy process. Therefore, policy reasons support our reliance on the bankruptcy court's reasoning in determining how the Bank's claims are handled.

[8] Because the Bank's current claims are based on CyberHome's accounts receivable, which were part of the latter's bankruptcy estate, the district court did not err in granting Hitachi's motion to dismiss.

---

[3]We further note that the district court did not abuse its discretion in denying the Bank's motion under Rule 59(e) to alter or amend the judgment, on the basis that the judgment did not depend on whether Hitachi paid the accounts receivable to CyberHome before or after CyberHome filed for bankruptcy.

**AFFIRMED.**