FILED

JUL 02 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EC-13-1378-JuTaKu |
| KHAMLA SIHABOUTH and MANYSAY SIHABOUTH, | Bk. No. 10-52564 |
| Debtors. | Adv. No. 13-02016 |
| KHAMLA SIHABOUTH; MANYSAY SIHABOUTH, | |
| Appellants, | |
| v. | M E M O R A N D U M[*] |
| THE BANK OF NEW YORK MELON, | |
| Appellee. | |

Argued and Submitted on May 15, 2014
at Sacramento, California

Filed - July 2, 2014

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Michael S. McManus, Bankruptcy Judge, Presiding

_____

Appearances: Clark Dwayne Nicholas, Esq. argued for appellants Khamla and Manysay Sihabouth; Bernard Kornberg, Esq., of Severson & Werson, argued for appellee The Bank of New York Mellon.

_____

Before: JURY, TAYLOR, and KURTZ, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Chapter 13[1] debtors Khamla and Manysay Sihabouth appeal from the bankruptcy court's order dismissing their adversary proceeding in favor of appellee, the Bank of New York Mellon (BONY). We AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

Debtors obtained two loans from Decision One Mortgage Company, LLC. The first loan for $164,000 was secured by a first deed of trust encumbering debtor's property on Blue View Street in Redding, California. The deed of trust named Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary, solely as nominee for Decision One and its successors and assigns. Decision One later assigned its interest in debtors' loan and deed of trust to BONY, but debtors contend the assignment was invalid. The other loan was for $41,000 and was secured by a second deed of trust against debtor's property on Blue View. Decision One evidently assigned this loan to Saxon Mortgage Services, Inc. Only the first loan is at issue in this appeal.

**A. Debtors' Bankruptcy And Confirmation Of Their Plan**

Debtors filed their chapter 13 petition on December 13, 2010. In Schedule A, they listed their real property on Blue View Street. In Schedule F, they listed the $164,000 loan owed to Decision One as unsecured and disputed. The claims bar date was April 13, 2011.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

Debtors' chapter 13 plan filed with their petition did not mention or provide for BONY's secured claim. BONY objected to confirmation of the plan on the grounds that it did not provide for $19,640.99 in arrearages owed to BONY, was infeasible, and was not filed in good faith. Attached to the objection was a copy of the note for the $41,000 loan. On February 14, 2011, the court denied confirmation of debtors' plan and a few days later dismissed BONY's objection as moot.

Debtors filed a first amended plan (FAP) on February 21, 2011, which again did not provide for BONY's secured claim. Regardless of whether BONY had a valid lien against debtors' property, neither of debtors' plans provided for payment of arrearages on the loan secured by the first deed of trust. Moreover, at the hearing on this matter, debtors' counsel acknowledged that they were not making any payments on the loan. In connection with their FAP, debtors filed a motion to modify their plan and have it confirmed. The chapter 13 trustee objected to confirmation because the FAP did not provide for the secured proof of claim (POC) filed by Saxon in the amount of $45,718.66. The trustee acknowledged that debtors had objected to Saxon's POC and that the hearing on the objection was scheduled for the same day as plan confirmation.

BONY objected to confirmation of the FAP on the same grounds as its first objection. In the objection, BONY states: "As set forth in Creditor's Proof of Claim, the pre-petition arrears due total $19,640.99," although BONY had not yet filed a formal POC. Attached to the objection was the note related to the $41,000 loan and the adjustable rate note and deed of trust

-3-

relating to the $164,000 loan.

On April 5, 2011, the day of the confirmation hearing, the bankruptcy court issued a civil minute order in connection with BONY's objection which stated: "The matter was improperly calendared as a stand-alone objection to plan confirmation, and is therefore dropped from calendar. The court will consider the merits elsewhere on this calendar." At the confirmation hearing the court continued the matter to September.

The bankruptcy court granted debtor's motion to modify and confirmed their FAP on September 9, 2011. The court overruled the trustee's objection on the ground that Saxon had voluntarily withdrawn its POC on August 5, 2011. BONY's objection to plan confirmation was never addressed.

Almost a year after confirmation, on September 4, 2012, BONY, through its servicer Bank of America, N.A., filed a formal POC. The POC listed the amount of the secured claim as $183,287.66 and showed arrearages of $19,826.99. The POC attached supporting documents including the note relating to the $164,000 loan, the deed of trust showing MERS as beneficiary, and the assignment of deed of trust. The trustee objected to the POC asserting that it was untimely. In response, BONY argued that the POC was a timely amendment of its informal POC that arose when it objected to confirmation of debtors' plans prior to the bar date. The bankruptcy court agreed with BONY, finding that its objections to confirmation of debtors' plan constituted informal proofs of claim filed before the bar date and thus the formal POC related back. The court thus overruled the trustee's objection based on untimeliness.

-4-

Although they were not a party to trustee's objection, debtors moved for reconsideration of the court's ruling. The court denied the motion, finding that the issues raised by debtors could be raised in an independent objection to the POC, but could not be considered in the context of a motion for reconsideration.

Debtors then filed an objection to the claim alleging BONY did not have standing to enforce the note, the assignment was invalid, and that BONY's objections to confirmation of debtors' plan should not be considered as an informal POC. Debtors requested the court to disallow the claim. The bankruptcy court issued a civil minute order denying the objection without prejudice. In its findings of fact and conclusions of law (FFCL), the court observed that the confirmed plan revested debtors' home in debtors and thus it was no longer property of the bankruptcy estate. Because BONY's claim was not being paid by the plan and the security for the claim was no longer property of the bankruptcy estate, the bankruptcy court concluded that if there were some dispute regarding the validity of the claim, it would have to be resolved in a nonbankruptcy forum. The court entered the order overruling the objection without prejudice on January 14, 2013.

**B.    The Adversary Proceeding**

Four days before the bankruptcy court's ruling on debtors' objection to BONY's POC, debtors filed an adversary complaint to determine the nature and extent of BONY's lien and to object to BONY's POC. Debtors' complaint essentially alleged that BONY lacked standing to enforce the note or deed of trust because it

-5-

offered no proof of its ownership of the debt.

BONY moved to dismiss the complaint for failure to state a claim or, alternatively, requested the bankruptcy court to abstain as the complaint raised only state law claims. BONY requested that the bankruptcy court take judicial notice of, among other things, the docket report for debtors' chapter 13 case, its POC, and the docket report for debtors' adversary proceeding.

After hearing, the bankruptcy court issued civil minutes setting forth its reasoning. In its ruling, the court considered its post-confirmation jurisdiction under the "close nexus" test set forth in Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1193 (9th Cir. 2005). In applying the standards set forth in that case, the bankruptcy court found no "close nexus" between the claims asserted in the adversary proceeding and the plan or bankruptcy proceeding for essentially the same reasons that it had denied debtors' objection to BONY's POC. Accordingly, the court concluded it did not have post-confirmation subject matter jurisdiction over the complaint challenging BONY's interest in the note and its collateral. The court also found it did not have subject matter jurisdiction when upon confirmation, all estate property, including the property purportedly securing the promissory note, revested in debtors. See 28 U.S.C. § 1334; Black v. United States Postal Serv. (In re Heath), 115 F.3d 521, 524 (9th Cir. 1997) (bankruptcy court is without jurisdiction to control disposition of chapter 13 debtor's property that is not property of the bankruptcy estate unless the property is related to the

-6-

bankruptcy proceedings of the Code); see also Cal. Franchise Tax Bd. v. Jones (In re Jones), 420, 506, 514-15 (9th Cir. 2009) (confirmation of chapter 13 plan changes estate property to property of the debtor unless the plan or confirmation order specifically states otherwise). The bankruptcy court entered the order dismissing the adversary proceeding on July 24, 2013. This appeal followed.

## II. JURISDICTION

As discussed below, the bankruptcy court did not have subject matter jurisdiction over debtors' adversary proceeding under 28 U.S.C. § 1334. However, we have jurisdiction to review the court's dismissal order under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred by dismissing debtors' adversary proceeding for lack of subject matter jurisdiction.[2]

## IV. STANDARDS OF REVIEW

We review de novo questions of subject matter jurisdiction. In re Pegasus Gold Corp., 394 F.3d at 1193; Davis v. Courington (In re Davis), 177 B.R. 907, 910 (9th Cir. BAP 1995) (dismissal of a complaint for lack of subject matter jurisdiction).

We also review de novo dismissal of a complaint for failure to state a claim under Civil Rule 12(b)(6). Ta Chong Bank Ltd. v. Hitachi High Techs. Am., Inc., 610 F.3d 1063, 1066 (9th Cir.

---

[2] The orders upholding BONY's POC as an amendment to a timely filed informal POC were not referenced in debtors' notice of appeal. Whether the bankruptcy court erred in ruling that BONY's objections to confirmation of debtors' plan constituted an informal POC is not properly before us and, therefore, we do not address debtors' arguments on this issue.

-7-

2010).

## V. DISCUSSION

**A.   Standards Applicable to Motions to Dismiss**

In considering a motion to dismiss for failure to state a claim under Civil Rule 12(b)(6), incorporated by Rule 7012, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). "On a motion to dismiss . . ., a court may take judicial notice of facts outside the pleadings." Mack v. S. Bay Beer Distrib., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

"Consideration of a motion for abstention[3] is akin to a motion to dismiss for lack of subject matter jurisdiction [under Civil Rule 12(b)(1)], in which the court may review affidavits and other evidence to resolve factual disputes concerning its jurisdiction to hear the action." DeLoreto v. Ment, 944 F.Supp. 1023, 1028–29 (D. Conn. 1996); see also McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). The burden of establishing subject matter jurisdiction rests on the party asserting that the court has jurisdiction. McNutt v. GM Acceptance Corp., 298 U.S. 178, 182–83 (1936); Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002).

---

[3] "Abstention can exist only where there is a parallel proceeding in state court." Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers, 124 F.3d 999, 1009 (9th Cir. 1997). Here, there was no state court action pending.

-8-

**B.   Overview of the Bankruptcy Court's Jurisdiction**

Because subject matter jurisdiction goes to the power of the court to hear a case, it is a threshold issue and may be raised at any time and by any party. See Civil Rule 12(b)(1), incorporated by Rule 7012. Even if the parties do not address the question of subject matter jurisdiction, bankruptcy courts still have a duty to satisfy jurisdictional questions. United Investors Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004)([bankruptcy] court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments).

The bankruptcy court's subject matter jurisdiction is defined by statute. Under 28 U.S.C. § 1334(b), a bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." "Arising under title 11" describes those proceedings that involve a cause of action created or determined by a statutory provision in the bankruptcy code. Harris v. Wittman (In re Harris), 590 F.3d 730, 737 (9th Cir. 2009). "Proceedings 'arising in' a bankruptcy are generally referred to as 'core' proceedings, and essentially are proceedings that would not exist outside of bankruptcy. . . ." In re Pegasus Gold Corp., 394 F.3d at 1193.

The bankruptcy court also has jurisdiction over "those proceedings that are 'related to' a bankruptcy case." Id. Under the Pacor test, a bankruptcy court has "related to" jurisdiction over a matter if:

the outcome of the proceeding could conceivably have

-9-

any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Fietz v. Great W. Savings (In re Fietz), 852 F.2d 455, 457 (9th Cir. 1988) (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). The United States Supreme Court endorsed Pacor's conceivability standard with the caveats that "related to" jurisdiction "cannot be limitless," and that the critical component of the Pacor test is that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." Celotex Corp. v. Edwards, 514 U.S. 300, 308 & n.6 (1995).

Since Fietz, the Ninth Circuit decided that the bankruptcy court's post-confirmation "related to" jurisdiction is not as broad as the Pacor standards. In re Pegasus Gold Corp., 394 F.3d at 1194. Instead, the court adopted the "close nexus" test for "related to" post-confirmation jurisdiction because that test more closely aligned with the limited nature of post-confirmation jurisdiction and, at the same time, retained a certain flexibility. Under the "close nexus" test, the essential inquiry is whether "there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy jurisdiction over the matter." Id. "[M]atters affecting 'the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.'" Id.

-10-

The Ninth Circuit later warned against any mechanical application of the test, noting that "[t]he Pegasus Gold 'close nexus' test requires particularized consideration of the facts and posture of each case, as the test contemplates a broad set of sufficient conditions and 'retains a certain flexibility.'" Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard), 729 F.3d 1279, 1289 (9th Cir. 2013). "Such a test can only be properly applied by looking at the whole picture." Id. Bankruptcy courts have applied the "close nexus" test to post-confirmation matters in the context of chapter 13. See Uber v. Nelnet, Inc. (In re Uber), 443 B.R. 500, 507 (Bankr. S.D. Ohio 2011); In re Janssen, 396 B.R. 624, 632-33 (Bankr. E.D. Pa. 2008).

Finally, besides defining the bankruptcy court's jurisdiction over civil proceedings, 28 U.S.C. § 1334 further expands bankruptcy jurisdiction by granting exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate" in subsection (e)(1). The bankruptcy court's jurisdiction over property, however, is temporal. When property is no longer "property of the estate" the court's jurisdiction ends. Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990).

> [T]here are two dimensions on which to assess 'related to' jurisdiction: substantive and temporal. A matter may be unrelated to a bankruptcy estate because it substantively has no impact on that estate, or it may be unrelated because the estate does not exist anymore. Either way, if a given dispute is unrelated to a bankruptcy estate, a bankruptcy court . . . has no subject-matter jurisdiction over that dispute.

-11-

United States v. Fleet Nat'l Bank (In re Calore Express Co., Inc.), 288 B.R. 167, 169-70 (D. Mass. 2002).

**C.  Analysis**

There is no doubt that the allegations in debtors' adversary complaint are intertwined with the claims allowance and disallowance process.  Generally, bankruptcy courts have jurisdiction over the allowance or disallowance of claims against the estate under 28 U.S.C. § 1334(b) because such matters are core proceedings under 28 U.S.C. § 157(b)(1)(B). However, the jurisdictional analysis shifts where, as here, debtors initiated the civil proceeding after confirmation of their bankruptcy plan.

The bankruptcy court did not have jurisdiction over the claim-objection adversary proceeding under 28 U.S.C. §§ 157(b) or (c) (establishing core and non-core bankruptcy court jurisdiction) because debtors' challenge to BONY's ownership of the debt came after confirmation of their FAP.  At that point, pursuant to the terms of their confirmed plan, the real property allegedly subject to BONY's lien revested in debtors.  The bankruptcy court's exclusive jurisdiction over a debtor's property under 28 U.S.C. § 1334(e)(1) is for a limited period of time — until confirmation and the property vests in the debtor. See § 1327(b) ("Except as otherwise provided in the [chapter 13] plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.").  Therefore, unless the plan provides otherwise, upon confirmation, all property of the estate revests in the debtor and the estate is terminated.  In re Jones, 420 B.R. 506 (9th

-12-

Cir. BAP 2009), aff'd, 657 F.3d 921 (9th Cir. 2011). Because debtors elected to have the property revest, BONY's claim was not against the bankruptcy estate, and thus the claim-objection adversary proceeding did not involve a right created by bankruptcy law or arising only in bankruptcy.

"Related to" jurisdiction also does not exist for essentially the same reasons. At the time debtors objected to BONY's POC there was no longer a plan to be confirmed, the underlying property subject to BONY's alleged lien was not property of the estate, and BONY's lien passed through the bankruptcy unaffected. Therefore, whether or not the bankruptcy court allowed or disallowed BONY's POC based on the claims asserted in the adversary, the outcome could not conceivably have had an affect on debtors' estate. In short, there was no administrative bankruptcy purpose to be served by adjudicating the claims.

Debtors fare no better upon application of the "close nexus" test. The state law claims raised in debtors' adversary proceeding did not involve matters affecting the interpretation, implementation, consummation, execution, or administration of debtors' confirmed plan because debtors did not "provide for" BONY's claim in their confirmed FAP. Contrary to debtors' assertion, their attempt to turn BONY's secured claim into an unsecured claim by scheduling it as unsecured and disputed was ineffective. Merely scheduling the claim as unsecured did not avoid or in any way impact BONY's lien. See Schnall v. Fitzgerald (In re Schnall), 2012 WL 1888144, at *5 (9th Cir. BAP 2012). Therefore, BONY's secured claim was not "provided for"

-13-

in debtors' FAP along with the other unsecured claims as debtors contend.

If a debtor's plan does not provide for a secured creditor's lien, the creditor may look to the lien for satisfaction of the debt, including arrearages. Brawders v. Cnty. of Ventura (In re Brawders), 503 F.3d 856, 872 (9th Cir. 2007). Secured liens pass through bankruptcy unaffected, regardless whether the creditor holding that lien ignores the bankruptcy case, or files an unsecured claim when it meant to file a secured claim, or files an untimely claim after the bar date has passed. See Bisch v. United States (In re Bisch), 159 B.R. 546, 550 (9th Cir. BAP 1993) ("there is no duty on the part of the secured party to object to the confirmation of the [Chapter 13] plan, and failure to do so does not somehow constitute a waiver of the party's secured claim"). Thus, BONY's lien — to the extent it exists — survives the bankruptcy discharge of debtors. Accordingly, debtors' adversary proceeding cannot possibly affect the consummation of their FAP. For all these reasons, the standards under the "close nexus" have not been satisfied. In sum, debtors did not meet their burden of establishing subject matter jurisdiction in the bankruptcy court.

On appeal debtors expressed concern that the bankruptcy court's ruling would have a preclusive effect on litigation over the validity of BONY's secured claim in the state court. Based on Ninth Circuit authority, generally "a claim is not barred by res judicata [claim preclusion] if the forum in which the first action was brought lacked subject matter jurisdiction to

-14-

adjudicate that claim.'" <u>Clark v. Bear Stearns & Co.</u>, 966 F.2d 1318, 1320-21 (9th Cir. 1992). Indeed, the bankruptcy court found that it lacked subject matter jurisdiction because no bankruptcy purpose would be served by a ruling that either allowed or disallowed BONY's POC.[4]

## VI. CONCLUSION

For the reasons stated, we discern no error with the dismissal order and AFFIRM.

Concurring decision begins on next page.

---

[4] At oral argument, BONY's counsel conceded that the bankruptcy court's dismissal order would have no preclusive effect on litigation between the parties in the state court.

-15-

Taylor, Bankruptcy Judge, concurring:

I concur in the result reached by the Panel and also agree with its § 1334 analysis. I write separately in order also to evaluate whether ancillary jurisdiction existed as a result of the bankruptcy court's orders overruling the Trustee's objection to BONY's late filed claim (the "Relation Back Order") and denying the Debtors' motion requesting reconsideration of that order (the "Reconsideration Order"). As discussed below, I conclude that it does not.

A bankruptcy court has "jurisdiction to interpret and enforce its own prior orders." See Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009); see also Battle Ground Plaza, LLC v. Ray (In re Ray), 624 F.3d 1124, 1130 (9th Cir. 2010) (bankruptcy court has ancillary jurisdiction to vindicate its authority and effectuate its decrees). Here, as a result of the Relation Back Order, and as confirmed by the Reconsideration Order, the bankruptcy court determined that BONY's late filed claim ("Claim") was "deemed timely."

In Siegel v. Fed. Home Loan Mortgage Corp., 143 F. 3d 525 (9th Cir. 1998), the Ninth Circuit held that a proof of claim can have claim preclusive effect where a proof of claim is "deemed allowed." Deemed allowance occurs when a claim is entitled to prima facie validity and in the absence of party in interest objection. Id. at 530-31.

The Debtors' adversary proceeding complaint includes an objection to the Claim. As the Debtors explain on appeal, they initiated the adversary proceeding not only to obtain substantive relief, but also to avoid any Siegel based claim

-1-

preclusive effect of the Relation Back Order. The adversary proceeding, thus, could be deemed to request, albeit obliquely, that the bankruptcy court interpret the Relation Back Order or effectuate the Relation Back Order to the extent it opened the door to an objection to the Claim, as it might if it otherwise gave the Claim "deemed allowed" status.

Here, however, ancillary jurisdiction also fails. I question whether the bankruptcy court had jurisdiction to enter the Relation Back Order, but need not decide this question.[1] I further question the applicability of <u>Siegel</u> based on the procedural history and facts of this case, but similarly need not make any determination in this regard.[2] Instead, I conclude that the Relation Back Order, as clarified by the Reconsideration Order, did not require interpretation or additional action to effectuate its intent, vindicate its

---

[1] Generally, a bankruptcy court has jurisdiction in a chapter 13 case to consider a post-confirmation claim objection and to make determinations regarding late filed claims. Here, however, the § 1334 analysis, which clearly demonstrates a lack of § 1334 jurisdiction over the Debtors' adversary proceeding, also raises questions as to the bankruptcy court's jurisdiction to enter the Relation Back Order. Jurisdictional issues may be raised at any point in time and in front of any court. <u>Attys. Trust v. Videotape Computer Products, Inc.</u>, 93 F.3d 593, 595 (9th Cir. 1996).

At the time of the claim objection that led to the Relation Back Order, the bar date had passed and the Claim was untimely, the Claim was filed as fully secured, the real property at issue was no longer an asset of the chapter 13 estate, and the Debtors' plan did not provide for the Claim in any respect.

[2] <u>Siegel</u> appears factually distinguishable in many respects. Most significantly, it involved timely claims and a complete failure of any attempt at objection.

directives, or in order to make clear that it is not entitled to claim preclusive effect.

The bankruptcy court clearly stated that its Relation Back Order was without prejudice to further consideration of the merits of the Debtors' objection to the Claim. Thus, it decided that the Claim was timely, but expressly left any decision on the merits for another day and, as appropriately decided by the bankruptcy court and the Panel, another court. Having reached this conclusion I find no basis for ancillary jurisdiction.[3]

---

[3] Consistent with this view is the fact that BONY admitted in argument before the Panel that claim preclusion was not available based on the Relation Back Order.

-3-